### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **FACTOR FOR NOW, INC.,** | |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER** |
| **vs.** | |
| **KERBY TRUCKING LLC, EVELINN ROBLES, BRENDA ROBLES, LUIS CARLOS MONZON, and CASH INVESTMENT CORPORATION,** | **Case No. 2:07-CV-00501DAK** |
| | **Judge Dale A. Kimball** |
| **Defendants.** | |

This matter is before the court on Defendant Cash Investment Corporation's (Cash) Motion to Dismiss Plaintiff Factor for Now, Inc.'s (Factor) Complaint for lack of personal jurisdiction.  The court held a hearing on the motion on February 6, 2008.  At the hearing, Jacob Briem represented Plaintiff Factor and C. Ryan Christensen represented Defendant Cash. Following the hearing, the court took the matter under advisement.  Now, having carefully considered the memoranda and additional materials submitted by the parties, as well as the relevant law and facts relating to the motion, the court renders the following Memorandum Decision and Order.

### BACKGROUND

1

Factor is a Utah company that facilitates immediate payment to trucking companies for delivering freight.  Trucking companies, who wish to avoid having to wait sixty to ninety days for payment of delivered goods, contract with Factor for immediate payment upon proof of delivery.

Cash is a finance company that provides consumer loans.  Cash has two offices in South Dakota and one office in Nevada.  These are the only states in which Cash conducts business.  Cash has no offices, employees, agents, or representatives in Utah, and none of Cash's directors, officers, or principals reside in the state.  Cash is not licensed to do business in Utah, does not conduct business in Utah, does not advertise or solicit business in Utah, has no customers or clients in Utah, and has not visited or sought out customers or clients in Utah.  Cash generates no business revenue in Utah; has never owed or paid any taxes in Utah; does not own, lease, or control any real property in Utah; and has no bank accounts in Utah.

Defendant Luis Carlos Monzon is a former employee of Cash in the Nevada office.  Monzon worked as a manager trainee for Cash from October 26, 2006, until March 15, 2007.

In early 2007, Factor sent a letter to Cash stating that Defendant Kerby Trucking LLC (Kerby) was assigning its current and future accounts receivable to Factor and that any and all future payments were to be made to Factor (the Notice of Assignment).  The Notice of Assignment provides that it will remain in effect until Factor gives further notice and states that any payments made to Factor will be paid to Kerby, or on behalf of Kerby.  The body of the Notice of Assignment concludes with language that "[s]hould either of us retain counsel to enforce its rights against the other, the prevailing party shall recover its attorney[] fees and expenses from the unsuccessful party."  Following the signature of Factor president Tina Van

Zant, the Notice of Assignment goes on to state:   "Please make the proper changes to your accounting systems and acknowledge receipt of this letter by signing below and returning it to Factor."  The Notice of Assignment then states, "Agreed and Accepted By," and provides three signature lines.  On the first signature line, designated for the recipient business name, Monzon allegedly wrote "Cash."  On the second and third signature lines, asking for the name of the authorized representative and an authorized signature, Monzon put his own name.  As a manager trainee, Monzon did not have authority to sign for the receipt of certified letters without prior approval from Cash.

Following the Notice of Assignment, Factor president Tina Van Zant contacted Cash on several occasions to verify receipt of the shipments and invoice amounts.  The receptionist at Cash transferred Van Zant to Monzon as the person in charge of shipments and payment for Cash.  Monzon returned phone calls to Factor on several occasions.  Factor never spoke with any of Cash's principals regarding the scope of Monzon's employment with Cash.

After a check from Cash bounced, Van Zant contacted Monzon.  Monzon informed Van Zant that he had been ill and unable to transfer the appropriate funds.  The checks were subsequently resubmitted and successfully cashed.  Two subsequent checks also bounced.  When contacted, Monzon informed Factor that one of Cash's owners had passed away and that there was a mix up with the checking accounts that caused the checks to bounce.  On more than ten occasions, Factor contacted Cash and was directed to Monzon to handle matters concerning shipment and payment.

At some point, Monzon informed Factor that Cash was purchasing substantial amounts of office equipment and furniture to furnish several new offices opening in Las Vegas, Nevada.

3

Based on Monzon's representations concerning validity of invoices, bills of lading, and receipt

of shipments, Factor advanced payments to Kerby.  Cash never authorized any of its employees,

agents, or representatives to send any invoices or documentation to Factor.

On July 10, 2007, Factor filed suit against Defendants in the United States District Court

for the District of Utah.  In its Complaint, Factor alleges, among other things, that in October

2006, Kerby entered into a contract with Factor; pursuant to the contract, Factor paid Kerby

upon proof of delivery of goods and Kerby assigned all its rights to accounts receivable to

Factor; Kerby customers were to pay Factor directly; Kerby submitted proof of several

deliveries, including deliveries to Cash, that never occurred; Kerby fabricated documents

indicating that Cash received several deliveries; Monzon helped created these fabricated

documents; Cash never received any actual deliveries from Kerby; and Monzon acted as an

agent of Cash.  Factor contends that Cash is vicariously liable for Monzon's allegedly fraudulent

acts.

In October 2007, Cash moved to dismiss Factor's Complaint for lack of personal

jurisdiction.

## DISCUSSION

Cash moves to dismiss Factor's Complaint for lack of personal jurisdiction.  As the

plaintiff, Factor bears the burden of proving jurisdiction.  *See Benton v. Cameco Corp.*, 375 F.3d

1070, 1074 (10th Cir. 2004).  Because "the evidence presented on the motion to dismiss consists

of affidavits and other written materials . . . [Factor] need only make a prima facie showing."

*Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).  The

court "'resolve[s] all factual disputes in favor of [Factor] in determining whether [Factor] has

made a prima facie showing.'"  *Benton*, 375 F.3d at 1074 (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995)).

 "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"  *Id*. at 1075  (quoting *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999)).  Because Utah's long arm statute is coextensive with the due process clause, it is appropriate for the court to begin its jurisdictional inquiry with the due process analysis.  *See Soma*, 196 F.3d at 1298;  *see also Hafen v. Strebeck*, 338 F. Supp. 2d 1257, 1260 (D. Utah 2004).

 The United States Supreme Court has held that "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts[,] ties, or relations."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quotations and citation omitted).  As a result, "a 'court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state.'"  *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1090 (10th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)) (additional quotations omitted).  The imperative that "minimum contacts" exist "protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar."  *Id*.

 There are two means by which the minimal contacts requirement is satisfied.  *See id*.

"First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from the alleged injuries that arise out of or relate to those activities.'"  *Id.* (quoting *Burger King*, 471 U.S. at 472) (emphasis and additional quotations omitted).  Second, in those cases where there is no forum related jurisdiction, "the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state."  *Id.*  (emphasis omitted).  In its brief, Factor concedes that the court lacks general jurisdiction.  Accordingly, the court only proceeds with the specific jurisdiction analysis.

A two-step inquiry guides the court's specific jurisdiction analysis.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004).   "First[, the court] must consider whether 'the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there.'"  *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297).  "'Second[,] if the defendant's actions create sufficient minimum contacts, [the court] must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'"  *Id.* (quoting *OMI*, 149 F.3d at 1091) (additional quotations and citation omitted).

To determine "whether a defendant has established minimum contacts with the forum state, [the court] examine[s] whether the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state.'"  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (third alteration in original).  "A defendant's contacts are sufficient if 'the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises

6

out of or results from actions by the defendant himself that create a substantial connection with the forum state.'"  *Id.* (quoting *OMI*, 149 F.3d at 1091) (emphasis, additional quotations, and citation omitted).

Factor argues that minimum contacts exist in this case on grounds that Monzon, acting on behalf of and as an agent of Cash, executed the Notice of Assignment; confirmed sham deliveries via telephone, invoices, and bills of lading; and returned phone calls from Factor to Factor's office in Utah.  *See Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) ("[I]t is well established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state.").

In response, Cash contends that Factor has failed to show that Monzon acted as an agent for Cash and that the requisite minimum contacts do not exist in this case.  In support of its argument that minimum contacts are lacking, Cash points to the following facts:  Cash has no offices located in Utah; Cash does not have any employees, agents, or representatives in Utah; none of Cash's directors, officers, or principals reside in Utah; Cash is not licensed to do business in Utah, does not conduct business in Utah, and does not advertise or solicit business in Utah; Cash has no customers or clients in Utah, and the company has not visited or sought out customers or clients in Utah; Cash generates no business revenue in Utah; Cash has never owed or paid any taxes in Utah; the company does not own, lease, or control any real property in Utah; and Cash has no bank accounts in Utah.

The court concludes that, even assuming Monzon acted in an agency capacity, there is

little or no support for Factor's assertion of minimum contacts in this case.[1]  Factor first argues

that minimum contacts exist on grounds that Monzon, acting on behalf of Cash, executed the

Notice of Assignment.  The United States Supreme Court has noted that "parties who reach out

beyond one state and create continuing relationships and obligations with citizens of another

state are subject to regulation and sanctions in the other [s]tate for the consequences of their

activities."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).  Nonetheless,  it is well

established that "[a] contract between an out-of-state party and a resident of the forum state

cannot, standing alone, establish sufficient minimum contacts with the forum."  *Benton v.*

*Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (citing *Burger King*, 471 U.S. at 473).

Pertinent factors for assessing minimum contacts with regard to contractual obligations "include

'prior negotiations and contemplated future consequences, along with the terms of the contract

and the parties' actual course of dealing.'"  *Id*.  (quoting *Burger King*, 471 U.S. at 479).

      Assuming, for purposes here, that the Notice of Assignment constitutes a valid and

binding contract, it was Factor who sent the Notice of Assignment to Cash, informing Cash that

it should direct all payments to Factor rather than Kerby.  *See Bell Helicopter Textron, Inc. v.*

*Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004) ("Generally speaking, specific

jurisdiction must be based on actions by the defendant and not on events that are the result of

unilateral action taken by someone else."); *see also Soma Med. Int'l v. Standard Chartered*

*Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) ("[C]ourts are unwilling to allow states to assert

personal jurisdiction over foreign defendants where the defendant's presence in the forum arose

---

[1]  The court's conclusion that Factor has failed to establish minimum contacts regardless of Monzon's agency status renders any agency analysis unnecessary.

from the unilateral acts of someone other than the defendant." (quotations and citation omitted)).

Additionally, there is no indication that Cash made any effort, besides acknowledging receipt of

the Notice of Assignment, to solicit Factor's business or to reach out to the state of Utah. *See*

*Soma*, 196 F.3d at 1299 (noting the relevance of defendant's lack of solicitation of plaintiff's

business in determining that no minimum contacts existed); *cf. Benton*, 375 F.3d at 1077 (noting

that defendant pursued a business relationship with a forum state business in finding that

minimum contacts existed). Finally, there is no evidence that the parties had any prior

negotiations or dealings. *Cf. id*. at 1078 (noting that defendant had engaged in business

transactions with plaintiff for a number of years and during that period plaintiff had always been

a resident of the forum state).

Factor next argues that minimum contacts exist because Monzon, acting on Cash's

behalf, confirmed sham deliveries via telephone, invoices, and bills of lading and returned phone

calls from Factor to Factor's office in Utah. But, "'[i]t is well[]established that phone calls and

letters are not necessarily sufficient in themselves to establish minimum contacts.'" *Soma*, 196

F.3d at 1298 (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995)).

There is no legal support for the proposition that "*any* contact with a resident of a forum"

satisfies the minimum contacts requirement. *Trujillo v. Williams*, 465 F.3d 1210, 1219 (10th Cir.

2006). "Instead, 'it is essential in each case that there be some act by which the defendant

purposefully avails itself of the privilege of conducting activities *within the forum [s]tate*, thus

invoking the benefits and protection of its laws.'" *Id*. (quoting *Burger King*, 471 U.S. at 475);

*see also id*. (citing *Institutional Food Marketing Assocs. v. Golden State Strawberries, Inc.*, 747

F.2d 448, 456 (8th Cir. 1984), for proposition that "it is the defendant's contacts with the forum

state that are of interest in determining whether personal jurisdiction exists, not its contacts with

a resident of the forum").  Furthermore, as earlier noted, the court's inquiry focuses on the

actions of the defendant, *see Bell Helicopter*, 385 F.3d at 1296, and here most of the phone calls

Factor alleges Cash made were actually in return to calls initially made by Factor to Cash.

     Additionally, assuming Cash did confirm sham deliveries, such fraudulent confirmation

occurred in Nevada, not Utah.  There is no support for Factor's contention that because the

injury—i.e., financial loss—occurred in Utah, personal jurisdiction is established.  *See Far W.*

*Capital*, 46 F.3d at 1079  (explaining that there is no "per se rule that an allegation of intentional

tort [causing injury to a forum resident] creates personal jurisdiction" and holding that there were

insufficient minimum contacts to establish personal jurisdiction where "[t]here [was] . . . no

evidence that defendants' alleged torts had any connection to Utah beyond plaintiff's corporate

domicile" and the fact that plaintiff had suffered financial effects of alleged torts in the state).

     In sum, Factor has failed to demonstrate that Cash's conduct and connection with Utah

were such that the company should have "reasonably anticipate[d] being haled into court [here]."

*Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quotations and citation omitted).

Thus, the court concludes that because the "quantity and quality" of contacts necessary to assert

personal jurisdiction over Cash are absent, dismissal is appropriate.[2]  *Trujillo v. Williams*, 465

F.3d 1210, 1220-21 (10th Cir. 2006) (quotations and citation omitted).

---

     [2]  Because the court decides that the minimum contacts requirement for specific
jurisdiction has not been satisfied, it is unnecessary for the court to consider the second part of
the specific jurisdiction inquiry, i.e., "whether the exercise of personal jurisdiction over the
defendant offends traditional notions of fair play and substantial justice."  *Benton v. Cameco
Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004) (quotations and citation omitted).

**CONCLUSION**

Cash's Motion to Dismiss is GRANTED.  The court orders each party to bear their own

costs.

DATED this 7th day of February, 2008.

BY THE COURT:

_____

DALE A. KIMBALL

United States District Judge

11